## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

Mauricio O.D.,

*Petitioner*,

v.

Todd Blanche, *Acting Attorney General*, *et al.*,

*Respondents*.

CIVIL NO. 26-cv-2627 (ECT/SGE)

**REPORT AND RECOMMENDATION**

This matter is before the Court on Petitioner Mauricio O.D.'s[1] Petition for Writ of Habeas Corpus (Pet., Dkt. 1). This matter has been referred to the undersigned by United States District Court Chief Judge Eric C. Tostrud for a report and recommendation under 28 U.S.C. § 636 (b)(1)(B) and Local Rule 72.1. For the reasons below, this Court recommends that the Petition be granted.

## BACKGROUND

Mauricio is a citizen of Guatemala who resides in Minneapolis. (Pet. ¶ 16.) He originally entered the United States in June 2007 in Arizona, encountered Border Patrol agents, and was processed as a voluntary departure and returned to Mexico the same month. (Rodriguez Decl., Dkt. 7, Ex. E at 3.) Sometime later, Mauricio returned to the United States and was charged with a gross misdemeanor, criminal sexual conduct in the 5th

---

[1] Pursuant to this District's policy in immigration cases, the Court identifies Petitioner only by his first name and last initial.

1

degree, under Minn. Stat. § 609.3451, subd. 1a(1). (Pet. ¶ 18; Rodriguez Decl. Ex. F.) The alleged victim was 20 years old at the time of the incident, which occurred in June 2015. (Pet. ¶ 19; Rodriguez Decl. Ex. F.)

On March 18, 2026, Respondents detained Mauricio after he was released by a Minnesota state court judge following a criminal hearing on the 2015 charge. (Pet. ¶ 16.) After the arrest, Respondents served Mauricio with an administrative Warrant for Arrest (Form I-200), a Notice of Rights (Form I-826), an Order to Detain (Form I-203), and a Notice to Appear (Form I-862). (Rodriguez Decl. Exs. A-D.) Mauricio is currently held at Freeborn County Adult Detention Center. (Pet. ¶ 22.)

Mauricio filed his Petition for Writ of Habeas Corpus on May 14, 2026. (Pet.) He argues that his state criminal charge does not subject him to mandatory detention and asks this Court to order his release or a bond hearing. The Court issued an Order to Answer on May 18, 2026, requiring Respondents certify the true cause and proper duration of Mauricio's confinement. (Dkt. 3.)

On May 29, 2026, Respondents filed a Response to the Petition. (Resp., Dkt. 6.) They argue that Mauricio is an inadmissible noncitizen under 8 U.S.C. § 1182(a)(7) and falls within the mandatory detention requirements of the Laken Riley Act, Pub. L. 119-1, 139 Stat. 3, which "removes the ability of this Court to set aside the decision to detain" Mauricio. (*Id.*) In support of their arguments, Respondents attached the following exhibits: a DHS Form I-200 Warrant for Arrest of Alien (Rodriguez Decl. Ex. A); a DHS Form I-826 Notice of Rights and Request for Disposition (*id.* Ex. B); a DHS Form I-203 Order to Detain or Release Alien (*id.* Ex. C); a DHS Form I-862 Notice to Appear (*id.* Ex. D); a

DHS Form I-213 Record of Deportable/Inadmissible Alien (*id.* Ex. E); a criminal summons and complaint from Watonwan County Court, Court file No. 83-CR-15-309 (*id.* Ex. F); and written pleadings from Mauricio's removal proceedings (*id.* Ex. G).

Mauricio filed a reply on June 3, 2026. (Reply, Dkt. 8.) He argues the Laken Riley Act is inapplicable to his detention and that this Court should order his release because an administrative bond hearing is rendered futile by the recent Eighth Circuit decision in *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026).

## ANALYSIS

A writ of habeas corpus can be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3).

> It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders. But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.

*Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citations omitted). The distinction between a noncitizen who has "effected an entry into the United States and one who has never entered runs throughout immigration law." *Id.* The petitioner bears the burden to prove that his detention is illegal by a preponderance of the evidence. *See Belsai D.S. v. Bondi*, 810 F. Supp. 3d 1016, 1020 (D. Minn. 2025) (citations omitted).

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996, 110 Stat. 3009-585 ("IIRIRA"), applies to immigration cases, and Sections 1225 and 1226 address the issue of detention. Section 1225(b)(2)(A) requires that noncitizens seeking

admission be detained pending removal proceedings. "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). Importantly, § 1225(b)(2) does not mention bond hearings. In *Avila v. Bondi*, the Eighth Circuit held that § 1225(b)(2)(A) applies to both noncitizens detained at the border *and* noncitizens present in the United States without authorization. 170 F.4th at 1138.

Separately, Section 1226 controls the apprehension and detention of removable noncitizens already inside the country. The Laken Riley Act, codified at § 1226(c)(1)(E), requires that inadmissible citizens arrested, charged with, or convicted of certain crimes remain detained during the pendency of their removal proceedings. *See* 8 U.S.C. § 1226(c)(1)(E)(i) & (ii). The Response to the Petition argues for detention under Section 1226 only, and does not address Section 1225.

## I.    Mandatory Detention under 8 U.S.C. § 1226(c)

Respondents assert that Mauricio's arrest and charge for criminal sexual conduct bring him "squarely within the mandatory detention requirements of the Laken Riley Act." (Resp. at 3.) Mauricio first argues that he has not been charged with, arrested for, or convicted of an enumerated crime in the Laken Riley Act nor a crime that results in serious bodily injury, and therefore the mandatory detention provisions of do not apply to him.

At the outset, the Laken Riley Act does not require Mauricio to be convicted for the mandatory detention provision to apply. The statute provides that a noncitizen who is inadmissible under §§ 1182(a)(6)(A), (a)(6)(C), or (a)(7) and "charged with [or] arrested

for . . . acts which constitute . . . any crime that results in . . . serious bodily injury to another person" is subject to mandatory detention. 8 U.S.C. § 1226(c)(1)(E). According to its plain wording, the statute's mandatory detention provision applies to noncitizens who are "charged with" or "arrested for" qualifying crimes. 8 U.S.C. § 1226(c)(1)(E)(ii). If Mauricio has been charged with or arrested for committing acts that qualify under the statute, then he is subject to mandatory detention.

But whether Mauricio has been arrested for and charged with a qualifying offense is a separate question. Mauricio argues that Respondents are attempting to "shoehorn" his criminal charge into being covered by § 1226(c) even though the charge does not require a showing of "serious bodily injury." Respondents argue that the conduct Mauricio has been charged with "fits squarely within the substantial bodily harm showing necessary for the government to invoke the Laken Riley Act" because federal law defines "serious bodily injury" as "bodily injury which involves . . . protracted loss or impairment of the function of a bodily member, organ, or mental faculty." (Resp. at 3.)

Mauricio has been arrested for and charged with fifth-degree nonconsensual sexual contact under Minn. Stat. § 609.3451, subd. 1a(1), a gross misdemeanor. (Rodriguez Decl. Ex. F.) According to the statute, "sexual contact" includes "the nonconsensual touching by the complainant of the actor's intimate parts, effected by the actor, if the action is performed with sexual or aggressive intent." Minn. Stat. § 609.3451, subd. 1a. Neither Mauricio nor Respondents identified persuasive authority addressing whether this crime is a qualifying offense authorizing mandatory detention under the Laken Riley Act.

5

Minnesota statutory and case law[2] demonstrate that it does not. The Laken Riley Act authorizes mandatory detention for certain specific offenses "or any crime that results in death or serious bodily injury to another person." 8 U.S.C. § 1226(c)(1)(E)(ii). Mauricio's fifth-degree criminal sexual conduct charge is premised on "nonconsensual sexual contact," and does not contain a harm requirement. *See* Rodriguez Decl. Ex. B; Minn. Stat. § 609.3451, subd. 1a(1). Even if this Court were to consider analogous assault crimes in Minnesota's criminal code, the different degrees of assault are based, in part, on the degree of harm the victim suffers. First-degree assault requires the infliction of "great bodily harm," Minn. Stat. § 609.221, subd. 1; third-degree assault requires the infliction of "substantial bodily harm," *Id.* § 609.223, subd. 1; and Fifth-degree assault requires the infliction of "bodily harm." § 609.224, subd. 1(2); *see also United States v. Taylor*, Case no. 16-cv-2498 (JNE), 2017 WL 506253, at *6 (D. Minn. Feb. 7, 2017) (examining fifth-degree assault and bodily harm requirements under Minnesota law); *Fyksen v. Dakota Cnty. Cmty. Dev. Agency*, No. A08-0372, 2009 WL 605663, at *2-3 (Minn. Ct. App. Mar. 10, 2009) ("[M]ere bodily harm, as is required for a conviction of fifth-degree assault, is not serious bodily injury.").

Respondents argue that Mauricio's alleged conduct "traumatized the victim effecting her mental faculty thus causing serious bodily injury." (Resp. at 3.) However, there is no evidence in the record establishing the alleged victim's trauma and no judicial finding from state court establishing it. Furthermore, fifth-degree criminal sexual conduct

---

[2] For our purposes, the term "serious bodily injury" has the meaning that term is given "in the jurisdiction in which the acts occurred." 8 U.S.C. § 1226(c)(2).

does not require injury of the victim as an element of the offense. *See* Minn. Stat. § 609.3451, subd. 1a(1). Mauricio's arrest for fifth-degree criminal sexual conduct alone does not establish that he was arrested for a crime that resulted in serious bodily injury as defined by the Laken Riley Act. *Santos-Barahona v. Jamison*, No. 26-cv-1776-JMY, 2026 WL 1047056, at *2 (E.D. Pa. Apr. 17, 2026) (determining that misdemeanor offenses did not constitute crimes authorizing mandatory detention under the LRA because there was no death or serious bodily injury); *Yesil v. Chestnut*, No. 1:26-cv-01758-DC-AC (HC), 2026 WL 834066, at *3 (E.D. Cal. Mar. 26, 2026) (determining that misdemeanor battery was not a qualifying crime under Laken Riley Act); *Lopez v. McShane*, No. 26-cv-771, 2026 WL 767779, at *3 (E.D. Pa. Mar. 18, 2026) (determining arrest for attempted crimes did not justify mandatory detention under Laken Riley Act).

The cases that Respondents cite do not compel a different conclusion. In *Connecticut Department of Public Safety v. Doe*, the Supreme Court determined that due process does not require that individuals be given an opportunity to prove a fact that is not material to the State's statutory scheme. 538 U.S. 1 (2003). There, the petitioner argued that Connecticut's public disclosure of its sex offender registry violated his Due Process rights because it did not afford registrants a hearing to determine whether he was likely to be "currently dangerous." *Id.* at 4. The Court found that, because an individual's inclusion on the registry was based on the fact of previous conviction, whether he was likely to be "currently dangerous" was immaterial to the statutory scheme. *Id.* Here, the statutory scheme that Respondents invoke makes clear that an individual in Mauricio's shoes is entitled to a bond hearing. *See* 8 U.S.C. § 1226(a).

7

Furthermore, Respondents justify Mauricio's mandatory detention only with reference to the Laken Riley Act. Regardless of whether a different statutory provision might justify mandatory detention, Respondents' opposition to the Petition must rise or fall based on the arguments they made to the Court. *See*, *e.g.*, *Hernandez-Torres v. Mullin*, No. 26-cv-0214, 2026 WL 1430705, at *2 (D. Neb. May 21, 2026) ("[A]n agency's action must be upheld, if at all, on the basis articulated by the agency itself." (cleaned up)). And under § 1226, Mauricio is entitled to a bond hearing.

## II.    Due Process

Mauricio's petition also asserts that his continued detention violates his due process rights under the Fifth Amendment to the U.S Constitution.[3] It is beyond dispute that Mauricio is entitled to due process of law. The Fifth Amendment provides, in pertinent part, that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The Supreme Court has determined that the Due Process Clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (holding that "[i]t is well established that the Fifth Amendment entitles aliens to due process of law'" in the context of removal proceedings) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

---

[3] Although *Avila* forecloses any challenge Mauricio might make to his detention under § 1225(b)(2)(A), *Avila* does not close the door on his as-applied Fifth Amendment Due Process challenge. *See Avila*, 170 F.4th at 1140 n.8 (Erickson, J., dissenting); see also *Jennings v. Rodriguez*, 583 U.S 281, 312 (2018) (resolving statutory issue but remanding to lower court to consider constitutional arguments).

8

To determine whether a detainee's due process rights have been violated, courts apply a three-part balancing test that weighs: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge*, 424 U.S. 319, 321 1976).

Respondents argue that the only process due to Mauricio is "whatever process is 'expressly conferred by Congress.'" (Resp. at 6 (quoting *Dep't of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 138 (2020)). But the factual differences between the petitioner in *Thuraissigiam* and Mauricio lead this Court to disagree that *Thuraissigiam* limits Mauricio's private interest. The petitioner in *Thuraissigiam* was "apprehended just 25 yards from the border" and was continuously detained. *Thuraissigiam*, 591 U.S. at 108. Thus, *Thuraissigiam* "merely reinforces our longstanding understanding that noncitizens 'on the threshold of initial entry stand[] on a different footing' than those who have 'passed through our gates.'" *Lopez-Campos v. Raycraft*, 175 F.4th 713, 732 (6th Cir. 2026) (citing *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)). Respondents concede that Mauricio, on the other hand, has been in the country since at least before June 2015. (*See* Resp. at 1.) More than a decade of Mauricio's presence in the country leads this Court to find that *Thurassigiam* does not limit his private interest under the *Mathews* balancing test.

9

Instead, the Court determines that the first factor weighs in Mauricio's favor. A person's interest in being free form detention is the "most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Fifth Amendment's Due Process] Clause protects."). Respondents' ongoing detention of Mauricio certainly affects that interest.

The second *Mathews* factor requires consideration of the risk of an erroneous deprivation of Mauricio's liberty and "the degree to which additional or substitute procedural safeguards could ameliorate the risks of erroneous deprivation." *Selvin Adonay E.M. v. Noem*, 817 F. Supp. 3d 720, 734 (D. Minn. 2025) (citing *Mathews*, 424 U.S. at 335). This Court agrees that "a substantial risk of erroneous deprivation of liberty exists" for "a noncitizen who was arrested within the United States and lacks any prior release by immigration authorities, but who has established a life here in the United States" when he is detained without an individualized determination. *Rodriquez Brizuela v. Noem*, Case no. 5:26-cv-0279-JKP, 2026 WL 752257, at *6 (W.D. Tex. Mar. 12, 2026). And although detention during removal proceedings is constitutionally permissible, "the government's authority to detain noncitizens is not limitless" and "should advance two regulatory goals: (1) ensuring the appearance of noncitizens at their immigration proceedings; and (2) preventing danger to the community while those proceedings are ongoing." *Jesus Alejandro G.A. v. Blanche*, No. 26-cv-1932 (LMP/ECW), 2026 WL 1383138, at *11 (D. Minn. May 18, 2026) (cleaned up). An individualized bond hearing would give both

10

Mauricio and Respondents an opportunity to be heard as to whether Mauricio's continued detention is necessary to advance the regulatory goals of pre-removal detention.

The third *Mathews* factor is the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Mathews*, 424 U.S. at 335. The Court grants that Congress has a substantial interest in the uniform administration of immigration laws, in ensuring that applicants for admission remain available for removal proceedings, and in applying the detention framework it enacted for unadmitted noncitizens. DHS has initiated removal proceedings for Mauricio and justifies his continued detention under § 1226, which as determined above, does not allow for mandatory detention and instead provides noncitizens in Mauricio's shoes an opportunity for a bond hearing. Respondents' interests are "not subverted by requiring the minimal procedural safeguard of a bond hearing," *Manuel G. v. Blanche*, Case no. 26-cv-2385 (SRN/ECW), 2026 WL 1256358, at *5 (D. Minn. May 7, 2026), especially where the statutory structure provides for one. Granting Mauricio the individualized determination of a bond hearing will give both Mauricio and Respondents an opportunity to present argument on whether he presents a flight risk or any danger to the community. This safeguard will "reduce the risk of erroneous deprivation without imposing significant burdens on the Government." *Selvin*, 817 F. Supp. 3d at 734.

This Court concludes that the *Mathews* factors weigh in Mauricio's favor and that mandatory detention pending removal violates his constitutional right to procedural due process. The appropriate remedy for such a constitutional deprivation is an opportunity to

11

be heard—the bond hearing contemplated by the statute that Respondents use to justify Mauricio's detention.

Mauricio also argues that this Court should order his immediate release because a bond hearing before an immigration judge whose actions are bound by agency interpretations of *Avila* is "futile" and an "inadequate" remedy. (Reply at 9.) Whether or not Mauricio is right about agency interpretations of *Avila*, federal law bars courts from setting aside any action or decision by the Attorney General regarding the revocation or denial of bond. 8 U.S.C. § 1226(e). All this Court can do is ensure that Mauricio is given the process that the Constitution requires.

The Department of Homeland Security has initiated removal proceedings for Mauricio. None of his arrest or immigration documents cite any justification for his continued detention without a bond hearing, and both § 1226 and due process demand that he be given one.

## RECOMMENDATION

Based on all the files, records, and proceedings herein, this Court hereby **RECOMMENDS** that:

1.  the Petition (Dkt. 1) be **GRANTED** as follows:

    a.  Petitioner is entitled to an individualized bond hearing under 8 U.S.C. § 1226(a).

    b.  Respondents be ordered to provide Petitioner with a bond hearing within one week after issuance of the Court's Order;

    c.  Respondents be ordered to file notice of such bond hearing directly with the Court within two hours of its scheduling; and

    d. If a bond hearing takes place that results in Petitioner's release, Respondents be ordered to:

        i. Release Petitioner to Minnesota;

        ii. At a safe time and place communicated at least two hours in advance to Petitioner's counsel; and

        iii. With all of Petitioner's personal effects in Respondents' possession, such as Petitioner's driver's license, immigration papers, passport, cell phone, keys, and the like; and

    e. If a bond hearing does not take place within one week, the Respondents be ordered to immediately release Petitioner from custody into Minnesota with the same conditions of release described in 1(d) above; and

2. Respondents be ordered to file a status report with the Court within 48 hours of the conclusion of the bond hearing or Respondents' decision to release Petitioner from custody detailing the results of the bond hearing or its actions related to release.

Dated: July 9, 2026                    *s/Shannon G. Elkins*
                                      SHANNON G. ELKINS
                                        United States Magistrate Judge

## **NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under the circumstances of this case and Local Rule 72.2(b)(1), the parties may file and serve specific written objections to a magistrate judge's proposed findings and recommendations **within 7 days** of the filing of the Report and Recommendation without regard to weekends or holidays. A party may respond to those objections **within 7 days** after being served a copy of the objections without regard to weekends or holidays. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).